Clifford WOODARD *v.* ITT HIGBIE
MANUFACTURING CO., Employer; INSURANCE
COMPANY OF NORTH AMERICA,
Insurance Carrier; and LIBERTY MUTUAL
INSURANCE COMPANY, Insurance Carrier

CA 80-212                                      609 S.W. 2d 115
Court of Appeals of Arkansas
Opinion delivered December 17, 1980

*Wright, Lindsey & Jennings* and *Charles D. Pearrow*, for
appellant.

*Friday, Eldredge & Clark*, for appellees.

DAVID NEWBERN, Judge. We are presented here with a question of application of the statute of limitations in workers' compensation cases. Ark. Stat. Ann. § 81-1318 (Repl. 1976 and Supp. 1979). The commission held the appellant's claim was barred by the statute. We disagree.

The appellant initially injured his back while working for ITT Higbie Manufacturing Co. in 1974. Compensation benefits were paid by ITT Higbie's carrier, Liberty Mutual Insurance Co. The appellant reinjured his back in 1976, and Liberty Mutual again made payments, the last one being made April 20, 1977. Permanent disability was not claimed by the appellant. Thereafter, ITT Higbie changed carriers. The appellant reinjured his back in June, 1978, and ITT Higbie's new carrier, Insurance Company of North America (INA), paid workers' compensation benefits to the appellant. In May, 1979, the appellant filed the claim, which is now before us, for a fourth recurrence of his back injury, seeking permanent disability benefits.

The medical evidence before the commission with respect to the 1976 and 1977 incidents referred to the condition of the appellant as "acute lumbosacral strain," and "chronic lumbosacral strain" respectively. A medical report of July 20, 1978, stated "he does have a herniated nucleus pulposus at L 4-5 on the left." Another medical report, dated July 27, 1978, said examination revealed "an L-4/5 disc and nerve root irritation." This report concluded "he can return to work as symptoms might warrant." Medical reports subsequent to the 1979 incident showed the appellant was hospitalized, and concluded he had a permanent partial physical impairment resulting from the condition of his back. The appellant filed his claim on May 30, 1979, seeking permanent partial disability benefits in the amount of 20%, including 10% anatomical impairment and 10% wage loss. The commission found that a preponderance of the evidence supported the administrative law judge's determination that all of the incidents subsequent to the one which occurred August 7, 1974, were "recurrences of the initial injury." The commission affirmed the administrative law judge's determination that the

statute of limitations barred the claim because no claim had been paid by Liberty Mutual for this injury for more than one year, and more than two years had elapsed since the injury of 1974. The payments made by INA seem to have been regarded as gratutious and, therefore, as not having been payments from which the statute of limitations would run. In summary, the commission has held that, with respect to any claims arising out of the 1974 injury, Liberty Mutual is the carrier which has coverage, and that as to Liberty Mutual, those claims are barred by the statute.

The purpose of the statute of limitations in workers' compensation cases is to permit prompt investigation and treatment of injuries. Larson, *Workmen's Compensation Law*, § 78.00 (1978). The statute runs in favor of the employer rather than the carrier. See, *Browning's Restaurant et al* v. *Kuykendall et al*, 263 Ark. 374, 565 S.W. 2d 33 (1978), where the supreme court said:

> Under Ark. Stat. Ann. § 81-1318 (Repl. 1976), the limitations therein stated run in favor of the employer, and a workers' compensation carrier cannot claim the benefit thereof unless the limitation has also run in favor of the employer. It follows that the Commission properly held that the liability of U.S.F. & G.was not barred by the statute of limitations. [263 Ark. at 377]

Although the parties properly do not regard it as an issue, we may prevent confusion by pointing out that the payments by INA did not have the effect of "reviving" any claim as to which the statute might have run with respect to the employer. See, Larson, *Workmen's Compensation Law*, § 78.43(b) (1976), at pp. 15-131 and 15-132:

> Once the claim has been barred by the passage of time, it will not be revived and a new period will not be set in motion by the furnishing of medical service years after the injury. The objective of the statute being to protect the claimant who reasonably refrains from making claim because of the receipt of benefits voluntarily supplied, no claimant can allege that his failure to make timely application was excused by something that

happened after the claim was already barred. Moreover, since the employer was under no obligation to furnish such benefits once the right to them was barred, it cannot be said that he provided them as voluntary compensation payments. [Footnotes omitted.]

Although this text mentions only medical payments made after the limitations period has run, the rule should apply to all compensation benefits.

The appellant contends the statute did not begin to run until he "should reasonably have discovered his condition." The essence of this agreement is that the appellant did not know he suffered from a herniated nucleus pulposus until July 20, 1978, and did not know that his disability was permanent until it was evaluated as such in 1979, and he filed his claim within two years of those events.

Liberty Mutual contends that the statute began to run with the initial occurrence in 1974; that the appellant knew what his condition was then, and he has waited more than two years from that event, and more than one year since their last payment, to file his claim.

The appellant cites *Donaldson* v. *Calbert-McBride Printing Co.*, 217 Ark. 625, 232 S.W. 2d 561 (1950), and *T. J. Moss Tie & Timber Co.* v. *Martin*, 220 Ark. 265, 247 S.W. 2d 198 (1952). In the *Donaldson* case the claimant had an accident but submitted no claim and accepted no benefits until after one year[1] had passed from the date of "the injury." The supreme court held he was not barred because the term "injury" means "compensable injury," and the "injury" did not become "compensable" until the claimant first learned the extent of his injury (a fractured coccyx) and was off work for a period that would entitle him to benefits for a compensable injury. Liberty Mutual attempts to distinguish the case on the ground that here the appellant had a compensable injury from the start, and he received workers' compensation benefits from 1974 on. While the dintinction is factually cor-

---

[1] The statute in effect at the time prescribed a one-year limitation, measuring the time from the date of the injury.

rect, we question whether it should be influential with respect to the principal we seek to apply and which is articulated there, *i.e.,* that the statute does not begin to run until the employee knows or should reasonably be expected to be aware of the extent or nature of his injury.

In the *T. J. Moss* case the claimant severely fractured his arm. After treatment, he was told by a physician the arm was healed and he could use it in his work. While doing so, more than one year after the last compensation payment had been made, the arm "completely gave way." The supreme court refused to construe the statute in a way that would "require a claimant to file a claim for disability which did not in fact exist and one that was not reasonably apparent or discoverable to the claimant [220 Ark. at 269]."

Liberty Mutual attempts to distinguish the *T. J. Moss* case by saying that here the appellant knew the nature of his injury from the outset. The medical evidence is to the contrary. It was not until 1978 he was diagnosed as having a herniated nucleus pulposus as opposed to the earlier "strain" diagnoses. Nor had any physician even mentioned permanent disability until 1979.

In *Sanderson and Porter* v. *Crow*, 214 Ark. 416, 216 S.W. 2d 796 (1949), upon which Liberty Mutual relies, the court reversed a decision granting benefits because the claim was barred by the state. Liberty Mutual makes much of the language of the court describing the injury there not as "latent" but as "recurrent" as was the injury before us. We are not persuaded by the case because the gravamen of that decision was not a distinction between "latent" and "recurrent." It was, rather, the finding by the court that:

> At all events, even if the injury were latent theretofore, certainly when the appellee was X-rayed and discharged from the Navy on December 5, 1944, any latent injury became patent so as to commence the running of the statute of limitations. [214 Ark. at 420]

We hold the appellant's claim was not barred by the statute of limitations because there is no substantial evidence

showing that the appellant knew or should have known the nature and extent of his injury more than two years prior to filing his claim.

Reversed and remanded.

Judge Penix did not participate.